## Wright *vs.* Bosworth, Trustee of Ford.

In foreign attachment the trustee cannot be charged for real estate in his possession.

He may, however, be indebted to the principal, by reason of real estate in his hands, in such manner as to render him chargeable.

But one who holds land in trust for the separate use of a wife, cannot be charged by reason of the land as the trustee of the husband.

In this case an auditor was appointed to state the accounts between the supposed trustee, Bosworth, and the principal, Ford, who in his report stated, among other things, the following facts :

On the 20th February, 1820, Ford and his wife Anne, being seized in her right of a certain farm in Lebanon, in this county, conveyed the same in fee and in mortgage to P. Parkhurst, to secure a debt due from Ford to Parkhurst.

On the 28th April, 1825, there being then due upon the mortgage the sum of $760, Bosworth paid Parkhurst that sum, who, by release, conveyed the land again to Ford and wife ; and they at the same time conveyed the same land to Bosworth, absolutely in fee.

The present value of the farm is $1000, and it will rent for $60 a year. Ford is of the age of fifty years.

Bosworth has never had any possession of the farm,—the said Ford having always had the same under his control.

Previous to the time when Bosworth discharged the mortgage as aforesaid, two brothers of Mrs. Ford, who are aliens, resident in England, remitted to Calvin Benton $755, as a gift to Mrs. Ford, to be appropriated at her discretion, but with the expectation on their part that it would be applied to the discharge of the said mortgage.

On the 28th November, 1829, the said sum of $755 was, by the direction of Mrs. Ford and her husband, paid over to

Bosworth, and the whole sum he had advanced to pay the mortgage adjusted, by Ford.

Benton received the $755 upon drafts made by Mrs. Ford upon her brothers, who, when she delivered the drafts to Benton, said, the money was to be applied to pay the Parkhurst mortgage ; that neither Ford nor herself would have any control of the money, but Benton must consider himself as the agent of the Parkers in the business.

*Bell*, for the plaintiff. Bosworth has no just right to retain both the farm and the $760, which he received on the 28th November, 1829. He must be answerable for the one or the other. And the court will be disposed, for obvious reasons, to adopt that course, which, consistently with the rules of law, will do the most obvious justice between the parties.

It may be said, perhaps, that the plaintiff has mistaken his course ; that, instead of bringing this process, he should have attached the land and treated the conveyance to Bosworth as a fraud upon Ford's creditors. But in answer to this, we say that there was no fraud in that conveyance. The amount advanced by Bosworth exceeded the value of any interest Ford had in the land.

Bosworth took the land as security for his debt, by an absolute conveyance, and he is now bound to account for its value beyond the debt.

This we consider as the well settled law. In *Pierson* vs. *Weller*, 3 *Mass. R.* 564, it was held that one to whom real estate had been conveyed as security for a debt less than the value of the estate, was liable for the surplus in process of foreign attachment.

So in the case of *Russell* vs. *Lewis & trustee*, 15 *Mass. R.* 127, the court held that the trustee should answer whether he had any real estate for which he was accountable, either with respect to the rents and profits, or the proceeds of the sale, if he had sold it.

In *Webb* vs. *Pule*, 7 *Pickering* 247, it was held that where real estate was conveyed by an absolute deed, but the real purpose of the conveyance was to pay debts of the grantor, the real estate passed by the deed, and that it should be applied at its actual value ; and that in case it was not sold at the time of the disclosure, time might be given, if wanted, to make the sale.

The principle of that case we consider as the same as the present.    The real estate was in that case, as in this, conveyed by an absolute deed.    But the real purpose was to pay a debt.    The trustee had personal property of the debtor which he wished to apply to the payment of his debt.    But the court held that he must apply the land for that purpose, and account for the personal property as trustee.

The same principle was adopted in the case of *Perley Buck* vs. *Benjamin Webster*, trustee of Dewey, in this court, May term, 1819.

Webster had purchased real estate of Dewey, who had failed and was insolvent ; and Webster had given Dewey notes for the purchase money.    The sale was fradulent as against creditors, and the court compelled Webster to state all the circumstances of the sale.    He stated that the notes had been given up without payment, and he was charged as trustee for the agreed value of the land.

In this case, we say that if the sale was valid when made originally, no after acts of the parties can alter the state of the title, without a reconveyance.

Bosworth cannot allege that he has taken the conveyance fraudulently, in order to discharge himself.

Having taken the land, and still continuing to hold it since 1829, as before, he is now chargeable as trustee for its fair and full value.

Whatever doubts may have heretofore existed as to the question, whether Ford had any interest in the $755 paid by Benton to Bosworth, we think it now clear that it belonged to Ford.    It was intended as a gift to the wife, but it was

paid over to Bosworth by the order of Ford and his wife. This shows that Ford claimed and had a control over the money ; and this is sufficient to establish Ford's legal right to the money.

*J. Smith*, for the trustee.

RICHARDSON, C. J., delivered the opinion of the court.*

It is clear, that real estate is neither goods, money, chattels, rights, or credits, within the meaning of the statute regulating foreign attachments. 9 *Pick.* 562 ; 6 *do.* 474 ; 4 *do.* 57 ; 5 *Mass. R.* 390.

But a credit may arise out of real estate, for which a trustee may be charged. 9 *Pick.* 562 ; 11 *do.* 101.

Whenever the trustee becomes indebted to the principal by reason of the land in any way, such debt is a credit within the meaning of the statute.

The question then is, whether Bosworth can be considered as indebted to Ford by reason of the land, so that he can now be charged for the debt in this suit ?

In order to settle this question, it is necessary to enquire how Ford stood in relation to the $755 with which the mortgage was discharged, and how he now stands in relation to the land.

The land belonged to the wife before it was mortgaged to Parkhurst, and Ford had at most only an estate for his own life.

The land was conveyed to Parkhurst to secure a debt of Ford, which exceeded the value of any interest he had in the land.

It is manifest, from the facts stated, that the Parkers had no intention to aid Ford in paying his debts, unless in so doing they could aid Mrs. Ford, their sister.

It is also manifest, that they were willing to redeem the land, if Mrs. Ford could have the benefit of it.

* PARKER, J., having been of counsel did not sit.

The mode adopted to give her the benefit of a discharge of the mortgage was this ; Bosworth was to pay Parkhurst the mortgage money—Parkhurst was to convey the land to Ford and wife, and they were to convey to Bosworth absolutely—and Bosworth was to be reimbursed by Mrs. Ford's brothers. Now, when all this was done, it is very manifest that Bosworth was seized of the land in trust for the separate use of the wife. And no wrong has been done to any creditor of Ford. All his interest in it has gone to pay his debt.

The money advanced by the Parkers was intended for the separate use of Mrs. Ford, and she is in law entitled to the use of it. 5 *N. H. R.* 178 ; 3 *do.* 147 ; 10 *Pick.* 261.

Ford has, then, no interest in the land, either legal or equitable, nor is there any debt due to Ford from Bosworth by reason of the land.

*Trustee discharged.*